UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

-------------------------------------------------------------------------------------------------------

Kristina Kipling,                                               No. 1:21-cv-00609-RP

                                Plaintiff,

                v.

TD Bank USA, N.A.,

                                Defendant.

---

**DEFENDANT TD BANK USA, N.A.'S
MOTION FOR DISMISSAL**

# Contents

Motion .................................................................................................................3

Party Defendant ..................................................................................................3

Issues .................................................................................................................3

Legal Standard ...................................................................................................5

Facts .................................................................................................................5

Argument ............................................................................................................6

I.    The complaint "pleads no factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." .......6

II.    Count I fails to state a claim for defamation and negligent misrepresentation because the Fair Credit Reporting Act preempts any such claim. ...........................7

    A.    The Fair Credit Reporting Act preempts any claim that relates to the responsibilities of persons who furnish information to consumer reporting agencies. ...................................................................................................8

    B.    The allegation of "malice" does not save the state-law claims from preemption. ..............................................................................................9

III.    Count II fails to state a claim under the Fair Credit Reporting Act. .....................12

    A.    The amended complaint alleges no notice from a consumer reporting agency that would have triggered TD's duties as a furnisher. ..................12

    B.    The Fair Credit Reporting Act provides that, absent a notice of dispute from a consumer reporting agency, administrative enforcement is the exclusive remedy for any alleged violation of a duty to provide accurate information. ..........................................................................................13

    C.    The alleged violation does not involve conduct that 15 U.S.C. § 1681s-2(b) prohibits. ......................................................................................15

    D.    Section 1681s-2(b) does not require a furnisher to report that a consumer has disputed an item. ...................................................................16

IV.    Count III fails to state a claim under the Texas Debt Collection Act because the relevant provision applies only to third-party debt collectors, and TD is a first-party creditor and not a third-party debt collector. ...............................................18

Conclusion .....................................................................................................21[1]

---

[1] This motion complies with the 20-page limit in Local Rule CV-7(C)(2) because "[t]he page limits are exclusive of the caption, the signature block, any certificate, and any accompanying documents."

## Motion

Defendant TD Bank USA, N.A., moves this Court under Federal Rule of Civil Procedure 12(b)(6) for dismissal as to the Plaintiff's First Amended Complaint (July 30, 2021) [ECF Doc. 8] for failure to state a claim upon which relief can be granted.

## Party Defendant

The amended complaint names TD Bank USA, N.A., as the Defendant, but refers to TD using the defined term "Target," (Am. Compl. [ECF Doc. 8] at 1) — presumably because TD issued Ms. Kipling's Target-branded credit card, (*see id.*, ¶ 5 at 2). TD's credit-card servicer is Target Enterprise, Inc., a subsidiary of the retailer Target Corporation. TD and Target are independent and unrelated entities, and TD does not do business under the name "Target." This motion therefore refers to the Defendant as "TD."

## Issues

1. For a claim of inaccurate credit reporting, the complaint "must make a 'prima facie showing of inaccurate reporting.'" The amended complaint says that the subject debt is disputed, but offers no basis for the dispute, fails to suggest how any reported information was allegedly inaccurate or incomplete, and otherwise alleges no underlying facts. Does the complaint state a claim in connection with TD's furnishing of information to consumer reporting agencies?

2. The Fair Credit Reporting Act provides that "[n]o requirement or prohibition may be imposed under the laws of any State" as to "the responsibilities of persons who furnish information to consumer reporting agencies." The complaint alleges

common-law and statutory state-law claims that relate to TD's responsibilities in furnishing information to consumer reporting agencies. Does the Act preempt those claims?

3.   The duties to a consumer of one who furnishes information to consumer reporting agencies are triggered only after notice of a dispute from a consumer reporting agency. The amended complaint does not allege any such notice. Does the amended complaint state a claim against TD in connection with its furnishing of information to consumer reporting agencies?

4.   The amended complaint alleges that TD "fail[ed] to supply accurate and truthful information." The Fair Credit Reporting Act does impose a "[d]uty of furnishers of information to provide accurate information," 15 U.S.C. § 1681s-2(a), but provides for administrative enforcement as the exclusive remedy for any violation of that duty. Does the amended complaint state a claim upon which relief can be granted?

5.   The amended complaint alleges that TD violated 15 U.S.C. § 1681s-2(b) "by failing to supply accurate and truthful information." The statute does not impose such a duty or prohibit such a failure. Does the amended complaint state a claim upon which relief can be granted?

6.   Count II alleges that TD violated 15 U.S.C. § 1681s-2(b) by not reporting that the subject debt was disputed. Section 1681s-2(b) does not require a furnisher to report that a consumer has disputed an item. Does the amended complaint state a claim upon which relief can be granted?

7.     Texas Debt Collection Act [Tex. Fin. Code] § 392.202 applies only to third-party debt collectors. TD is a first-party creditor and not a third-party debt collector. Is TD subject to the statute?

## Legal Standard

To survive a motion for dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Twombly*, 550 U.S. at 555–56. A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," then dismissal is mandatory. *Twombly*, 550 U.S. at 570.

## Facts

On a motion for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court "must assume the truth of the material facts as alleged in the complaint." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)). But the court need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," even when pleaded as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Likewise, "legal conclusions masquerading as factual conclusions will not

suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987
F.2d 278, 284 (5th Cir. 1993)). And a court "need not resolve unclear questions of law in
favor of the plaintiff." *Kansa Reins. Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362,
1366 (5th Cir. 1994).

## Argument

Ms. Kipling's amended complaint asserts three claims: a state-law claim for
defamation and negligent misrepresentation, (Am. Compl. [ECF Doc. 8], ¶¶ 20–22 at 4);
a federal-law claim under the Fair Credit Reporting Act, (*id.*, ¶¶ 23–26); and a state
statutory claim under the Texas Debt Collection Act, (*id.*, ¶¶ 27–30 at 4–5). All three
claims relate to information that TD has furnished to consumer reporting agencies about
Mr. Kipling's Target-branded credit-card account.

## I.     The complaint "pleads no factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

For a claim of inaccurate credit reporting, "an actual inaccuracy" must exist, so
the plaintiff "must make a 'prima facie showing of inaccurate reporting'" in the
complaint. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)
(quoting *Dennis v. BEH-I, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008)); *accord Chiang v.
Verizon New England, Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) ("absent a showing of actual
inaccuracy on a reinvestigation, a plaintiff's claim against a CRA fails as a matter of
law"); *see Potter v. Greensky, LLC*, No. 5:19-cv-00581-JKP, 2019 U.S. Dist. LEXIS
180517, at *5 (W.D. Tex. Oct. 18, 2019) ("the threshold question is whether Plaintiff
alleged an inaccuracy on her credit report").

The amended complaint alleges only that Ms. Kipling "disputed the alleged debt" and TD "knew or should have known that Kipling had disputed the alleged debt." (Am. Compl. [ECF Doc. 8], ¶¶ 6–7 at 2; *id.*, ¶ 12 at 3; *see also id.*, ¶¶ 8–10 (referring to "Kipling's dispute"); *id.*, ¶ 13 at 3 ("the debt's disputed status"); *id.*, ¶ 19 ("knew the alleged debt was disputed").) The amended complaint offers no basis for any dispute, fails to suggest how any reported information was allegedly inaccurate or incomplete, and otherwise alleges no underlying facts. Without even that minimum level of detail about her credit-reporting claim, Ms. Kipling's pleading does not "nudge[] [her] claims across the line from conceivable to plausible" and dismissal is mandatory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A cause of action against a furnisher of information to consumer reporting agencies "fails as a matter of law" and is subject to dismissal where the "complaint fails to provide any facts as to what negative information was reported, let alone the supposed inaccuracy." *O'Connor v. Capital One, N.A.*, No. CV 14-00209-KAW, 2014 U.S. Dist. LEXIS 74045, at *19 (N.D. Cal. May 29, 2014).

II.     **Count I fails to state a claim for defamation and negligent misrepresentation because the Fair Credit Reporting Act preempts any such claim.**

Count I alleges that TD is liable under Texas common law for defamation and negligent misrepresentation because TD "knowingly and willfully communicated false credit information about Kipling to the various credit reporting agencies, namely that the alleged debt was not in dispute when it fact it was disputed; and . . . has subsequently caused that false information to be published willfully and knowingly." (Am. Compl. [ECF Doc. 8], ¶ 21 at 4.)

A.   **The Fair Credit Reporting Act preempts any claim that relates to the responsibilities of persons who furnish information to consumer reporting agencies.**

Congress, finding that "[a]n elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers," 15 U.S.C. § 1681(a)(2), has extensively and exhaustively regulated the credit-granting and consumer-credit-reporting industries. To impose uniform nationwide standards on the industry, Congress enacted the Fair Credit Reporting Act, which regulates both consumer reporting agencies and creditors who furnish information to them. Fair Credit Reporting Act, Pub. L. No. 91-508, 84 Stat. 1127 (1970) (codified at 15 U.S.C. ch. 42, subch. III, §§ 1681–81x). The Act establishes a detailed scheme by which a consumer can dispute any information that is being reported to a consumer reporting agency. *See* 15 U.S.C. § 1681i (procedure in case of disputed accuracy). The Act likewise sets forth detailed steps that a furnisher must take in case of such a dispute. *See* 15 U.S.C. § 1681s-2(b) (duties of furnishers of information upon notice of dispute).

Congress amended the Fair Credit Reporting Act in 1996 by inserting a new provision, section 625(b)(1)(F) (codified at 15 U.S.C. § 1681t(b)(1)(F)), under the caption "preemption of state law,"[2] to the effect that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." Omnibus Consolidated

Appropriations Act, 1997, Pub. L. No. 104-208, § 2419, 110 Stat. 3009, 3009-452 to -453 (1996) (codified at 15 U.S.C. § 1681t(b)(1)(F)). That provision preempts state "laws" in any form, including "all sources of legal rules — statutes, regulations, judicial decisions, and administrative decisions." *Purcell v. Bank of Am.*, 659 F.3d 622, 624 (7th Cir. 2011); *accord Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992)); *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009) ("Plaintiff's distinction between statutory and common-law claims under this section of the FCRA's express preemption provision is likewise unpersuasive."); *Marshall v. Swift River Acad., LLC*, 327 F. App'x 13, 15 (9th Cir. 2009) ("state law [defamation] claims, based exclusively on information [the defendant] furnished to the CRA, are preempted by the FCRA").

The Fair Credit Reporting Act therefore preempts Ms. Kipling's state-law claims for defamation and negligent misrepresentation because they relate to the responsibilities of persons who furnish information to consumer reporting agencies.

**B.      The allegation of "malice" does not save the state-law claims from preemption.**

Count I does evade an earlier form of preemption:

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by

---

[2]The caption "preemption of state law" appeared in the enacting statute but was not codified.

>       a user of a consumer report to or for a consumer against whom the user
>       has taken adverse action, based in whole or in part on the report *except as
>       to false information furnished with malice or willful intent to injure such
>       consumer.*

15 U.S.C. § 1681h(e) (limitation of liability) (emphasis added). The amended complaint

alleges that TD's "actions . . . were done with gross negligence or with malice," (Am.

Compl. [ECF Doc. 8], ¶ 22 at 4), presumably in order to bring count I within the

exception under section 1681h(e). But the 1996 addition of section 1681t(b)(1)(F)

superseded that exception, and preempted *all* state-law claims, even with regard to "false

information furnished with malice or willful intent to injure," as one court writing just a

few years after the addition explained:

>       Because Congress did not amend this language [section 1681h(e)] when it
>       amended the FCRA in 1996 with, *inter alia*, section 1681t, plaintiff
>       asserts, those two sections must be read as working in conjunction in order
>       to effectuate congressional intention. Plaintiff thus argues that its CPL
>       [state consumer-protection law] claims against [furnisher] of willful and
>       intentional failure to reinvestigate the information disputed by the plaintiff
>       should stand.
>           The court disagrees. While Congress did not specifically provide in
>       the 1997 amendments that section 1681t supercedes 1681h, it is clear from
>       the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all
>       state causes of action "relating to the responsibilities of persons who
>       furnish information to consumer reporting agencies." Any other
>       interpretation would fly in the face of the plain meaning of the statute.

*Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361–62 (E.D. Pa. 2001).

While a few courts have held that section 1681t preempts only statutory claims and does

not preempt common-law tort claims, that approach has been widely criticized and

rejected: at least four federal appellate courts have rejected the statutory-preemption

approach in favor of the "blanket preemption" approach. *See Macpherson v. JPMorgan

Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011) (citing *Cipollone v. Liggett Group,*

*Inc.*, 505 U.S. 504, 521 (1992)); *Purcell v. Bank of Am.*, 659 F.3d 622, 624 (7th Cir.

2011); *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009);

*Marshall v. Swift River Acad., LLC*, 327 F. App'x 13, 15 (9th Cir. 2009). As one such

appellate court explained:

> Unlike these judges, we do not perceive any inconsistency between the two statutes. Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; §1681t(b)(1)(F) preempts more of these claims. Section 1681h(e) does not create a right to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added §1681t(b)(1)(F) to the United States Code. The same legislation also added §1681s-2. The extra federal remedy in §1681s-2 was accompanied by extra preemption in §1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges. Reading the earlier statute, §1681h(e), to defeat the later-enacted system in §1681s-2 and §1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.
>
> Our point is not that §1681t(b)(1)(F) repeals §1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour. Just as the later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so §1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of §1681h(e), because there are exceptions to §1681t(b)(1)(F). When it drops out, §1681h(e) remains.

*Purcell*, 659 F.3d at 625.

The Fair Credit Reporting Act preempts the state statutory and common-law

claims that relate to TD's responsibilities in furnishing information to consumer reporting

11

agencies. This Court should therefore dismiss those claims for failure to state a claim upon which relief can be granted.

III.     **Count II fails to state a claim under the Fair Credit Reporting Act.**

Count II alleges that TD violated the Fair Credit Reporting Act: TD "as a furnisher of information to the credit bureaus, violated the FCRA § 1681s-2[b], by failing to supply accurate and truthful information." (Am. Compl. [ECF Doc. 8], ¶ 24 at 4.)

A.     **The amended complaint alleges no notice from a consumer reporting agency that would have triggered TD's duties as a furnisher.**

The Fair Credit Reporting Act establishes a detailed scheme by which a consumer can dispute any information that is being reported to a consumer reporting agency. *See* 15 U.S.C. § 1681i (procedure in case of disputed accuracy). The Act likewise sets forth detailed steps that a furnisher must take in case of such a dispute. *See* 15 U.S.C. § 1681s-2(b) (duties of furnishers of information).

The duties of one who furnishes information about a consumer to consumer reporting agencies under the Fair Credit Reporting Act are triggered only "[a]fter receiving notice pursuant to [15 U.S.C. § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). Only a consumer reporting agency can give such a notice. *See* 15 U.S.C. § 1681i(a)(2) (prompt notice of dispute to furnisher of information).

The amended complaint does not allege any "notice" that would have triggered TD's duties to Ms. Kipling. The amended complaint does allege that "[o]n or about

October 2, 2020, Kipling contemporaneously disputed the alleged debt with the three

credit bureaus." (Am. Compl. [ECF Doc. 8], ¶ 12 at 3.) But the pleading does not allege

that any consumer reporting agency received Ms. Kipling's dispute, that any consumer

reporting agency notified TD about the dispute, or that TD received such a notice.

> B.   **The Fair Credit Reporting Act provides that, absent a notice of dispute from a consumer reporting agency, administrative enforcement is the exclusive remedy for any alleged violation of a duty to provide accurate information.**

The Fair Credit Reporting Act does impose a "[d]uty of furnishers of information

to provide accurate information." 15 U.S.C. § 1681s-2(a) (caption). But the Act provides

for administrative enforcement as the exclusive remedy for any violation of that duty.

The Act provides for civil liability through a private civil action in 15 U.S.C. §§ 1681n–

o. But section 1681s-2, which establishes the "responsibilities of furnishers of

information to consumer reporting agencies," provides that "sections 1681n and 1681o of

this title do not apply to any violation of . . . subsection (a) of this section, including any

regulations issued thereunder." 15 U.S.C. § 1681s-2(c)(1) (limitation on liability).

"Subsection (a)" refers to section 1681s-2(a), captioned "[d]uty of furnishers of

information to provide accurate information," and enforcement of that provision can

occur only "as provided in section 1681s(c)(1)(B) of this title" — which provides for

enforcement by "the chief law enforcement officer of a State, or an official or agency

designated by a State," who "may bring an action on behalf of the residents of the State to

recover . . . damages for which the person would, but for section 1681s-2(c) of this title,

be liable to such residents as a result of the violation" of "any of paragraphs (1) through

(3) of section 1681s-2(c) of this title." *Id.* § 1681s(c)(1)(B)(ii) (State action for

violations—authority of States). Administrative enforcement is the exclusive remedy under section 1681s(c)(1)(B) for any such alleged violation. *See Young v. Equifax Credit Info. Servs. Inc.*, 294 F.3d 631, 630 (5th Cir. 2002).

The Fair Credit Reporting Act therefore provides for administrative enforcement as the exclusive remedy for TD allegedly providing inaccurate information. The Act's scheme does provide in section 1681s-2(b) for a case where a consumer can bring a civil action directly against a furnisher of information — but only after the furnisher "receiv[es] notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" and has had an opportunity for investigation. 15 U.S.C. § 1681s-2(b) (duties of furnishers of information upon notice of dispute). Thus, a consumer (like Ms. Kipling) can sue a furnisher (like TD) directly, but only after notice from a consumer reporting agency to the furnisher and an opportunity for the furnisher to investigate the consumer's dispute and modify the information that the furnisher is reporting. If the consumer does not follow the statutory procedures under section 1681s-2(b) and allow such notice and opportunity, then under section 1681s-2(a) & (c) only administrative enforcement is available for the alleged violation, and the consumer has no private right of action. *Young*, 294 F.3d at 630.

The amended complaint's failure to plead notice to TD from a consumer reporting agency may be a technical defect that an amendment could cure. But count II also suffers from other failures that are fatal to Ms. Kipling's claim, even if she did successfully allege notice from a consumer reporting agency: that the alleged violation does not

involve conduct that 15 U.S.C. § 1681s-2(b) prohibits, and that section 1681s-2(b) does

not require a furnisher to report that a consumer has disputed an item.

      C.      **The alleged violation does not involve conduct that 15 U.S.C. § 1681s-2(b) prohibits.**

Count II alleges that TD "violated the FCRA § 1681s-2[b], by failing to supply

accurate and truthful information." (Am. Compl. [ECF Doc. 8], ¶ 24 at 4.) That section,

titled "duties of furnishers of information upon notice of dispute," provides:

> (b)      **Duties of furnishers of information upon notice of dispute**
>
>     (1)      **In general**
>          After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
>          (A)    conduct an investigation with respect to the disputed information;
>
>          (B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
>          (C)    report the results of the investigation to the consumer reporting agency;
>
>          (D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
>          (E)    if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>             (i)      modify that item of information;
>
>             (ii)    delete that item of information; or
>
>             (iii)    permanently block the reporting of that item of information.

(2)     **Deadline**
A person shall complete all investigations, reviews, and
reports required under paragraph (1) regarding information
provided by the person to a consumer reporting agency,
before the expiration of the period under section
1681i(a)(1) of this title within which the consumer
reporting agency is required to complete actions required
by that section regarding that information. Fair Credit
Reporting Act § 623(b), 15 U.S.C. § 1681s-2(b).

Thus, a furnisher can violate section 1681s-2(b) only in six possible ways: (1) by failure
to "conduct an investigation with respect to the disputed information," (2) by failure to
"review all relevant information provided by the consumer reporting agency," (3) by
failure to "report the results of the investigation to the consumer reporting agency,"
(4) by failure to report a finding of "incomplete or inaccurate" information "to all other
consumer reporting agencies to which the person furnished the information," (5) by
failure to modify, delete, or block disputed information that "is found to be inaccurate or
incomplete or cannot be verified," or (6) by taking the required actions but in an untimely
manner.

Count II's allegation that TD "violated the FCRA § 1681s-2[b], by failing to
supply accurate and truthful information," (Am. Compl., ¶ 24 at 4), is a conclusory
allegation and, more to the point, is not one of the six ways that a furnisher can violate
section 1681s-2(b).

D.     **Section 1681s-2(b) does not require a furnisher to report that a
consumer has disputed an item.**

Count II alleges that TD "violated the FCRA § 1681s-2[b], by failing to supply
accurate and truthful information." (Am. Compl. [ECF Doc. 8], ¶ 24 at 4.) Count II does
not say what "accurate and truthful information" TD allegedly "fail[ed] to supply," but

count I suggests that it was "that the alleged debt was not in dispute when it fact it was disputed," (*id.*, ¶ 21).

The amended complaint nowhere identifies the substance of any alleged dispute. More to the point, section 1681s-2(b) contains no requirement that a furnisher report to the consumer reporting agencies the fact that a consumer has disputed an item. There are circumstances in which such a duty may arise — that is, when a furnisher must report to the agencies that a consumer has disputed an item. But the duty does not arise automatically as a matter of law whenever a consumer has disputed an item. The duty arises only when a furnisher's report does not mention the item's disputed nature and, lacking that information, the resulting report is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). The duty arises only where "a consumer has presented a lender with a colorable argument against liability" for the disputed item. *Bauer v. Target Corp.*, No. 8:12-cv-00978-AEP, 2013 U.S. Dist. LEXIS 201316, at *16 (M.D. Fla. June 19, 2013) (quoting *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009)). So even though a furnisher must *sometimes* report that a consumer has disputed an item, that fact "does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). A consumer who complains of such a failure must go at least a step further: "The consumer must still convince the finder of fact that the omission of the dispute was 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.'" *Gorman*, 584 F.3d at 1163 (quoting *Saunders*); *accord Sepulvado*, 158 F.3d at 895. The amended

complaint contains no allegation from which a court or a jury can reach such a conclusion.

And while there is no private cause of action under section 1681s-2(a), that subsection does offer guidance to furnishers about the standard for suspecting an inaccuracy. Section 1681s-2(a) requires that a furnisher "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," 15 U.S.C. § 1681s-2(a)(1)(A) (reporting information with actual knowledge of errors), and establishes the standard for "reasonable cause to believe that the information is inaccurate" as "having specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information," 15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added).

The amended complaint fails to state a claim against TD because it nowhere alleges any fact that can support a violation of 15 U.S.C. § 1681s-2(b).

IV.   **Count III fails to state a claim under the Texas Debt Collection Act because the relevant provision applies only to third-party debt collectors, and TD is a first-party creditor and not a third-party debt collector.**

Count III claims that Target violated Texas Debt Collection Act [Tex. Fin. Code] § 392.202:

> 28.   Target violated the TDCA § 392.202 by continuing to collect on the alleged debt, despite having received Kipling's dispute and despite failing to furnish the results of its investigation.
> 29.   Target violated the TDCA § 392.202 by refusing to investigate Kipling's dispute of the alleged debt unless her dispute were notarized.

(Am. Compl. [ECF Doc. 8], ¶¶ 28–29 at 5; *see also id.*, ¶¶ 10–11 at 2–3.)

18

The Fair Credit Reporting Act preempts Ms. Kipling's state-law statutory claim under the Texas Debt Collection Act for the same reason that it preempts her state-common-law claim for defamation and negligent misrepresentation: because those claims relate to the responsibilities of persons who furnish information to consumer reporting agencies, and the Fair Credit Reporting Act preempts any such claim. *See* 15 U.S.C. § 1681t(b)(1)(F). The inquiry could end there. Yet count III also fails to state a claim for an independent, but equally fatal, reason: not only does federal law preempt the claim, but count III fails to state a claim even under state law.

Section 392.202 is titled "correction of third-party debt collector's or credit bureau's files," and its provisions apply only to disputed information furnished by a "third-party debt collector." *See* Tex. Fin. Code § 392.202(a) ("An individual who disputes the accuracy of an item that is in a third-party debt collector's or credit bureau's file on the individual and that relates to a debt being collected by the *third-party debt collector* may notify in writing the *third-party debt collector* of the inaccuracy." (emphasis added)); *id.* § 392.202(b) ("a *third-party debt collector* who initiates an investigation shall send a written statement . . ." (emphasis added)); *id.* § 392.202(c) ("If the *third-party debt collector* admits that the item is inaccurate under Subsection (b), the *third-party debt collector* shall . . ." (emphasis added)); *id.* § 392.202(d) ("If the *third-party debt collector* states that there has not been sufficient time to complete an investigation, the *third-party debt collector* shall . . ." (emphasis added)); *id.* § 392.202(e) ("On completion by the *third-party debt collector* of the investigation, the *third-party debt collector* shall . . .") (emphasis added)).

TD is not a third-party debt collector. The Texas Debt Collection Act defines a "third-party debt collector" as "a debt collector, as defined by 15 U.S.C. Section 1692a(6)." Tex. Fin. Code § 392.001(7). The referenced statute is a provision within the Fair Debt Collection Practices Act, which defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition thus excludes first-party creditors collecting their own debt in their own name. *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) ("[t]he FDCPA's provisions generally apply only to 'debt collectors,'" and "[c]reditors — as opposed to 'debt collectors' — generally are not subject to the FDCPA"); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *Whatley v. AHF Fin. Servs., LLC*, No. 4:1-cv-488, 2012 U.S. Dist. LEXIS 162750, at *6– 7 (E.D. Tex. Sept. 17, 2012) (quoting *Pollice*, 225 F.3d at 403); *see also United States v. ACB Sales & Serv., Inc.*, 590 F. Supp. 561, 576 (D. Ariz. 1984) (rejecting argument "that the FDCPA unfairly discriminates against independent debt collectors" because others "such as the actual creditor or his lawyer, are not regulated by the Act"); S. Rep. No. 95- 382, at 2 (1977) (creditors "generally are restrained by the desire to protect their good will when collecting past due accounts"), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, *quoted in Schlosser*, 323 F.3d at 536.

TD is such a first-party creditor, and thus is not a third-party debt collector. The amended complaint alleges only that TD is a "debt collector" under Texas law, (Am. Compl. [ECF Doc. 8], ¶ 4 at 2), which covers first-party creditors as well as third-party

debt collectors, Tex. Fin. Code § 392.001(6); *Bitterroot Holdings, LLC v. Bank of N.Y. Mellon*, No. 14-cv-804 (RCL), 2017 U.S. Dist. LEXIS 222644, at *45 (W.D. Tex. Aug. 3, 2017) ("Critically, unlike its federal analog 'debt collectors' under the TDCA includes anyone who directly or indirectly acts to collect on a consumer debt."); *Am. Express Centurion Bank v. Haryanto*, 491 S.W.3d 337, 347 (Tex. App.—Beaumont [9th Dist.] 2016). The amended complaint does not allege that TD is a third-party debt collector.

Count III therefore fails to state a claim under the Texas Debt Collection Act because the relevant provision applies only to third-party debt collectors, and TD is a first-party creditor and not a third-party debt collector.

## Conclusion

The amended complaint "pleads no factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Here, the amended complaint alleges only that Ms. Kipling "disputed the alleged debt," and that TD "knew or should have known that Kipling had disputed the alleged debt." But the pleading offers no basis for the alleged dispute, fails to suggest how any reported information was allegedly inaccurate or incomplete, and otherwise alleges no underlying facts.

Count I fails to state a claim for defamation and negligent misrepresentation because the Fair Credit Reporting Act preempts any claim that relates to the responsibilities of persons who furnish information to consumer reporting agencies.

Count II fails to state a claim under the Fair Credit Reporting Act. The amended complaint alleges no notice from a consumer reporting agency that would have triggered

TD's duties as a furnisher. The Act provides that, absent a notice of dispute from a consumer reporting agency, administrative enforcement is the exclusive remedy for any alleged violation of a duty to provide accurate information. The alleged violation does not involve conduct that 15 U.S.C. § 1681s-2(b) prohibits. Section 1681s-2(b) does not require a furnisher to report that a consumer has disputed an item.

The Fair Credit Reporting Act preempts count III, Ms. Kipling's state-law statutory claim under the Texas Debt Collection Act, for the same reason that it preempts her state-common-law claim for defamation and negligent misrepresentation: because those claims relate to the responsibilities of persons who furnish information to consumer reporting agencies, and the Fair Credit Reporting Act preempts any such claim. Yet count III also fails to state a claim for an independent, but equally fatal, reason: not only does federal law preempt the claim, but count III fails to state a claim even under state law. Count III fails to state a claim under the Texas Debt Collection Act because the relevant provision applies only to third-party debt collectors, and TD is a first-party creditor and not a third-party debt collector.

Therefore, TD respectfully asks that this Court dismiss this action for failure to state a claim upon which relief can be granted.

September 3, 2021.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____
Brian Melendez, Minn. License No.
    0223633 (admitted pro hac vice)
BARNES & THORNBURG LLP
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

in association with

Alicia M. Barrs, Texas Bar No. 24109620
Suite 700
2121 North Pearl Street
Dallas, TX 75201-2469
Ph. 214.258.4105
Fax 214.258.4199
Alicia.Barrs@btlaw.com

Attorneys for Defendant
    TD Bank USA, N.A.

**Certificate of Service**

I certify that, on September 3, 2021, I served the foregoing document through the CM/ECF system to the following:

| Party | Attorney | Email Address |
|---|---|---|
| Plaintiff Kristina Kipling | Robert Zimmer | zimmerlawTX@gmail.com |

September 3, 2021.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, Minn. License No.
  0223633 (admitted pro hac vice)
BARNES & THORNBURG LLP
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

24